Jeffrey J. **BONIFATE,** an individual; Kathleen D. Cooper–Moranelli, an individual; Denise Patten, an individual, Rebecca S. Horan, an individual, Lisa L. Altemare, an individual, Appellants

v.

## RINGGOLD SCHOOL DISTRICT and Ringgold Education Association.

Jeffrey J. Bonifate, an individual; Kathleen D. Cooper–Moranelli, an individual; Denise Patten, an individual, Rebecca S. Horan, an individual, Lisa L. Altemare, an individual

v.

## Ringgold School District and Ringgold Education Association, PSEA/NEA, Appellants.

Commonwealth Court of Pennsylvania.

Argued Oct. 14, 2008.

Decided Nov. 25, 2008.

---

Samuel J. Cordes, Pittsburgh, for designated appellants, Jeffrey J. Bonifate, Kathleen D. Cooper–Moranelli, Denise Patten, Rebecca S. Horan, Lisa L. Altemare.

Timothy R. Berggren, Washington, for appellee, Ringgold School District.

Ronald N. Watzman, Hunker, for appellees, Ringgold Education Association, PSEA/NEA.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge McGINLEY.

Jeffrey J. Bonifate, Kathleen D. Cooper–Moranelli, Denise Patten, Rebecca S. Horan, and Lisa L. Altemare (collectively, Bonifate) challenge the order of the Court of Common Pleas of Washington County (common pleas court) which denied Bonifate's request to vacate the award of the arbitrator. The arbitrator rejected the proposition that the Ringgold School District (District) failed to grant teachers full credit for District years of service upon moving from one salary schedule to another in violation of Section 1142 of the Public School Code of 1949, (Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 11–1142.

The District and the Ringgold Education Association (REA) cross-appeal from the

common pleas court's order which denied the District's motion to quash the petition of Bonifate.

The District and the REA stipulated to the facts before the arbitrator and that Article XIX of the 1999–2004 collective bargaining agreement (1999 Agreement) between the parties contained two separate salary schedules.

On December 13, 2004, REA filed a grievance and claimed the 1999 Agreement and the Code were violated because Bonifate, when he obtained permanent teaching certification, was not placed on the proper step of the Career schedule based upon his years of service in the District. On February 25, 2005, the grievance was amended to include all other bargaining unit members in like or similar circumstances. There were forty bargaining unit members that claimed relief under the grievance. When hired by the District, all but two of them were placed on the salary schedule for teachers who had not yet obtained permanent certification. At the time of hire, each bargaining unit member signed a temporary professional employment contract which stated the starting salary for each employee. Crucially, all forty of the bargaining unit members received salaries in excess of the State minimums contained in Section 1142 of the Code.

The parties agreed to bifurcate the arbitration hearing into liability and damages. The parties began to negotiate a successor agreement to the 1999 Agreement in January 2004, but had not reached a new agreement. On February 15, 2006, the District and the REA finally signed a successor agreement effective from September 1, 2004, through August 31, 2008.

On February 17, 2006, the arbitrator denied the grievance. The arbitrator reasoned:

Significantly, the Association [REA] does not argue that the School District failed to strictly comply with the clear and unambiguous provisions of the collective bargaining agreements. Rather, it argues that despite following the agreed upon provisions professional employees failed to receive proper salary schedule credit for each year of service in the District. It further argues that when a professional employee is moved to the 18 step schedule they are not placed on a step within the schedule representing one step for every year of service. Thus both the letter and spirit of Section 1142 have been violated. I strongly disagree.

. . . .

... In each of the last three collective bargaining agreements there have been at least two separate salary schedules for professional employees. Employees were placed on the lower salary schedule once they had obtained their permanent teaching certification. However, regardless of where a professional employee was originally placed upon hire, or where they were subsequently moved either on the same salary schedule or from one salary schedule to another, each employee received a salary increase each year and was paid in excess of the minimum salaries required under Section 1142 of the School Code. Since the Ringgold School District has always paid Grievants in *excess* of the statutorily required salaries it's [sic] means of doing so, which in this case are multiple salary schedules, are irrelevant. The Ringgold School District has therefore met it's [sic] statutory duty under Section 1142.

*The Commonwealth Court in Axelrod v. Board of Education,* 740 A.2d 1225 ( [Pa.Cmwlth.] 1999) ... also addressed the issue of compensation beyond state mandated minimums.

'Once the state minimums (under Section 1142) have been met the provision has been satisfied and nothing in the provision prevents other means to be used to determine salary increases. . . .'

In the Ringgold School District the 'other means to determine salary increases' is and has been a negotiated system of multiple salary schedules that provide for salaries in excess of the state minimums as well as increases for each year of service after the time of hire.

. . . .

What the Association's argument boils down to is the fact that there is not a linear, numerical advancement from the numbered steps on the new teachers' salary schedule, which contains six sequentially numbered steps, to the salary schedule for teachers with permanent certification, which contains 18 sequentially numbered steps. In other words, a teacher does not eventually progress from Step 3 on the new teacher's schedule to Step 4 on the permanent certification schedule. However, nothing in the collective bargaining agreement indicates that the parties ever intended there to be such a correlation between the two schedules. The numbering of the steps was strictly for the convenience of the parties and does not necessarily represent one year of service for each step. . . . There simply is no direct inter-relationship between the numbered steps on the separate salary schedules. In fact, the parties clearly were cognizant of this issue and specifically addressed it by establishing where on the permanent salary schedule new hires are to be placed upon obtaining permanent certification. That ultimate placement was not meant, however, to reflect a direct correlation with the total number of years of credited service earned by the new teacher upon acquiring permanent certification. Although each salary schedule has columns labeled 'step', nowhere in the collective bargaining agreement is the term 'step' defined and nowhere does it state that 'steps' equal years of service. (Emphasis in Original).

Arbitrator's Opinion and Award, February 16, 2006, at 20–24.

The REA informed Bonifate that it would not appeal the Arbitrator's award. On March 16, 2006, Bonifate, Kathleen D. Cooper–Moranelli, Denise Patten, Rebecca S. Horan, and Lisa L. Altemare, all individual teachers, appealed to the common pleas court and petitioned to vacate the arbitration award. The REA intervened as an additional respondent. The District moved to quash the appeal on the basis that the 2004 Agreement applied rather than the 1999 Agreement that formed the basis for the arbitrator's decision and that Bonifate could not appeal the arbitration award, only the REA.

The common pleas court denied the motion to quash. The common pleas court held that the issue before the arbitrator was properly within the terms of the collective bargaining agreement and that the interpretation by the arbitrator was rationally derived from the collective bargaining agreement. Consequently, the common pleas court denied the petition to vacate.

Bonifate appealed to this Court. The REA and the District cross-appealed from the common pleas court's decision denying the motion to quash. The Pennsylvania State Education Association filed an amicus brief.

Bonifate contends that the common pleas court committed an error of law when it affirmed the arbitrator's conclusion that the District did not violate Section 1142 of the Code when it failed to grant its teachers full credit for years of

service obtained as a temporary professional employee upon transferring from a "New Teacher" step salary scale to a "Career" step salary scale, when it applied the wrong standard in reviewing the arbitrator's award under 42 Pa.C.S. § 7302(d)(2), as well as prior Supreme Court precedent which held that every collective bargaining agreement incorporates the Code and a court must vacate an arbitration award inconsistent with the Code.

The REA and the District contend that the common pleas court erred when it utilized the incorrect collective bargaining agreement and found Bonifate had standing to bring and continue his appeal from the arbitration award when Bonifate was not a party to the arbitration proceedings where only the District and the REA were parties and when the 2004 Agreement specifically authorized the REA to bring the appeal.[1]

Before addressing the merits of Bonifate's appeal, this Court must address the contention of the REA and the District that Bonifate did not have standing to appeal the arbitrator's award to the common pleas court.

Prior to the execution of the 2004 Agreement on February 15, 2006, the REA and the District operated under the terms of the 1999 Agreement. After the expiration of that agreement, the parties maintained a status quo relationship and the terms of

the 1999 Agreement continued until the execution of a new agreement. Article IV(C)(3) of the 1999 Agreement relating to Level III Grievances provided:

> If the action in Level II fails to resolve the alleged grievance to the satisfaction of the affected parties, *the grievance shall be referred to binding arbitration* as provided in Section 903 of the Act within twenty days of the Superintendent's written decision or shall be considered settled on the basis of such decision and shall not be subject to further appeal.
>
> . . . .
>
> *If the grievant or the Association fails to follow the time limits as described herein and has made no request for an extension* in accordance with the guidelines above, the grievance will be dismissed and awarded in favor of the employer/School District. (Emphasis added).

1999 Agreement, Article IV(C)(3) at 6; Reproduced Record (R.R.) at 342a.

Bonifate filed his grievance on December 13, 2004, during the "status quo" period. The grievance was later amended on February 25, 2005, to include others in the same situation. The REA proceeded to arbitrate the grievance. On February 15, 2006, the new collective bargaining agree-

---

1. The proper role of a court on review of an arbitrator's interpretation of the terms of a collective bargaining agreement is one of deference. *Danville Area School District v. Danville Area Education Association,* 562 Pa. 238, 754 A.2d 1255 (2000). The "essence" test is the appropriate standard of review of labor arbitration awards under the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101—1101.2301. Under the essence test, an appellate court must first determine if the issue, as properly defined, is encompassed within the terms of the collective bargaining agreement. If so, the court will uphold the arbitrator's award if the arbitrator's interpretation is rationally derived from the collective bargaining agreement. Our Pennsylvania Supreme Court has made it clear that a reviewing court does not inquire into whether the arbitrator's decision was reasonable or even manifestly unreasonable; instead, the question is whether the award may in any way be rationally derived from the agreement between the parties. *State System of Higher Education v. State College University Professional Association (PSEA–NEA),* 560 Pa. 135, 743 A.2d 405 (1999).

ment was executed. Article XX of the 2004 Agreement provided:

This Agreement shall be effective and in full force, except as otherwise provided, as of September 1, 2004, and shall continue in effect through August 31, 2008 subject to the Association's right to negotiations over a successor Agreement as provided in Article II. This Agreement shall not be extended orally and it is expressly understood that it shall expire on the date indicated.

2004 Collective Bargaining Agreement, Article XX at 62, R.R. at 264a.

The arbitrator issued his award on February 17, 2006. The REA informed Bonifate that it would not appeal the award. Bonifate subsequently appealed the arbitration award to the common pleas court on his own. The District moved to quash on the basis that only the REA, not an individual union member, could appeal.

The District and the REA based this conclusion on the terms of the 2004 Agreement. Article IV(C)(3) of the 2004 Agreement provides:

If the action in Level II fails to resolve the alleged grievance to the *satisfaction of the Association* [REA], *the Association may refer the grievance to binding arbitration* as provided in Section 903 of the Act within thirty (30) school days of the Superintendent's written decision or shall be considered settled on the basis of such decision and shall not be subject to further appeal. (Emphasis added).

2004 Agreement, Article IV(C)(3) at 6; R.R. at 211a.

The District argued in its motion to quash that the 2004 Agreement applied and that under the terms of Article IV(C)(3), only the REA and not an individual grievant could refer a grievance to arbitration and then appeal the subsequent

arbitration award. The common pleas court, however, determined:

Respondent [REA] has not established that the Collective Bargaining Agreement between Ringgold School District and the Ringgold Education Association, executed on February 15, 2006, and referring back to an effective date of September 1, 2004, may cut off the rights of a grievant with regard to a pending grievance lawfully commenced during the 'status quo' period between August 31, 2004, and February 15, 2006. On that basis, the 1999–2004 Collective Bargaining Agreement between the Ringgold School District and the Ringgold Education Association is the applicable collective bargaining agreement for this Court to examine....

Common Pleas Court Order, July 6, 2006, at 1; R.R. at 282a.

■ This Court must determine (1) which collective bargaining agreement controls and (2) if the 2004 Agreement controls did it preclude Bonifate from appealing to the common pleas court. It is undisputed that the 2004 Agreement provided that it shall take effect as of September 1, 2004, except as otherwise provided. The 2004 Agreement contains no provisions that grievances commenced before the execution of the 2004 Agreement shall continue to follow the 1999 Agreement. Indeed, this Court has held that a "collective bargaining agreement is a contract, hence any rights and remedies must be derived solely from the agreement itself." *McGrath v. Municipality of Penn Hills*, 64 Pa.Cmwlth. 477, 440 A.2d 1279, 1280 (1982). When the parties to an agreement reduce their understanding to writing in clear and unambiguous terms, a court need look no further than the writing itself when asked to give effect to that understanding. *Robert F. Felte, Inc. v. White*, 451 Pa. 137, 143–144, 302 A.2d 347,

351 (1973). From a review of the four corners of the 2004 Agreement, this Court is satisfied that the 2004 Agreement controls procedurally.

Both parties as well as the common pleas court point to *Kozura v. Tulpehocken Area School District*, 568 Pa. 64, 791 A.2d 1169 (2002) as controlling concerning whether Bonifate has a right to appeal the arbitration award. In *Kozura*, John A. Kozura (Kozura), a math and science teacher at Tulpehocken Area School District (TASD) had been suspended without pay. When TASD terminated Kozura following notice and a hearing, the Tulpehocken Education Association (TEA), Kozura's union, filed a grievance on his behalf and requested reinstatement and an award of back pay and corresponding benefits. The matter proceeded to arbitration. The arbitrator reinstated Kozura based on a determination that there was no just cause for termination. The arbitrator failed to award Kozura back pay and benefits because the arbitrator concluded that Kozura's classroom conduct warranted strong discipline in the form of a suspension without pay. Kozura requested that the TEA appeal from the arbitration award. The TEA denied the request and initially advised Kozura that he could file an appeal himself or through counsel. The TEA subsequently informed Kozura that it made a mistake and that only TEA could appeal. Kozura petitioned for review of the arbitration award in the Court of Common Pleas of Berks County. The TASD moved to quash the appeal on the basis that Kozura lacked standing to challenge the award as he was not a party to the arbitration proceedings. The Court of Common Pleas of Berks County granted the motion to quash because the collective bargaining agreement between the TEA and TASD vested in the TEA the exclusive right to pursue arbitration. *Kozura*, 568 Pa. at 66–68, 791 A.2d at 1170–1171.

Kozura appealed to this Court which affirmed even though it determined that the collective bargaining agreement did not vest in the TEA an exclusive right to pursue arbitration. This Court noted that the settlement mechanism set up by the grievance procedure would be jeopardized if individual employees were allowed to circumvent the union's dispute resolution procedure. *Kozura v. Tulpehocken School District*, 765 A.2d 424 (Pa.Cmwlth.2000).

Our Pennsylvania Supreme Court allowed appeal to address the issue of whether an individual employee can appeal a grievance arbitration award. Our Pennsylvania Supreme Court reviewed the collective bargaining agreement between TEA and the TASD and determined that Kozura could appeal the arbitration award in his own capacity. The Supreme Court reversed this Court:

> Provided that the provisions of a collective bargaining agreement do not violate or conflict with a statute or home rule charter ... the rights and remedies delineated by the parties to a specific agreement, including those pertaining to the capacity *vel non* of an individual employee to appeal must be respected. Here, Kozura contends that the collective bargaining agreement between the District and the Association is unusual in that it specifically authorizes the individual employee to pursue grievances in his own right, to refer unresolved grievances to arbitration, and, as a necessary consequence of those authorizations, to appeal from an adverse award.
>
> ....
>
> [After reviewing the collective bargaining agreement, our Pennsylvania Supreme Court determined] Thus, Kozura is correct that, under this particular agreement, it is the employee, not the Association [TEA], who initiates each step of the grievance procedure, including referral to arbitration.

. . . .

Moreover, in light of the contractual language that affords the Association [TEA] representative status solely at the employee's behest, we can discern no basis of record for depriving Kozura of his ability to reject union representation when faced with an adverse arbitration that the Association [TEA] had no intention of appealing.

*Kozura,* 568 Pa. at 71–74, 791 A.2d at 1174–1175.

Here, a review of the 2004 Agreement reveals that Article IV(C)(3) of the 2004 Agreement provides, "If the action in Level II fails to resolve the alleged grievance to the *satisfaction of the Association* [REA], *the Association may refer the grievance to binding arbitration."* (Emphasis added). 2004 Agreement, Article IV(C)(3) at 6; R.R. at 211a.

█ Under the terms of the 2004 Agreement, only the REA and not an individual union member may proceed to arbitration. In *Kozura,* the union appeared as part of the arbitration proceedings only at the behest of the employee. Here, it is the REA that controls whether a matter goes to arbitration. Because Bonifate did not have the right to decide to arbitrate the grievance, it stands to reason that he did not have the ability to appeal the arbitration award to the common pleas court. Therefore, the common pleas court erred when it denied the motion to quash.

█ However, because the final order of the common pleas court ruled against Bonifate, the REA and the District were not aggrieved. Because they were not aggrieved, the REA and the District did not have standing to file a cross-appeal to this Court. As a result, this Court must quash the cross-appeal. The argument raised in the cross-appeal should have been raised as an alternate argument in the brief of the REA and the District in opposition to Bonifate's appeal. Because the REA and the District properly briefed the issue of Bonifate's standing to appeal to the common pleas court in the brief for the cross-appeal, this Court addressed it and found it persuasive as an alternate basis to affirm the common pleas court.[2]

Accordingly, this Court quashes the cross-appeal of the REA and the District. This Court affirms the common pleas court in Bonifate's appeal.[3]

### ORDER

AND NOW, this 25th day of November, 2008, the appeal of the Ringgold School District and the Ringgold Education Association, PSEA/NEA at No. 429 C.D.2008 is quashed. The order of the Court of Common Pleas of Washington County at No. 416 C.D.2008 is affirmed.

**2.** This Court may affirm on other grounds where grounds for affirmance exist. *Belitskus v. Hamlin Township,* 764 A.2d 669 (Pa. Cmwlth.2000), *petition for allowance of appeal denied,* 565 Pa. 676, 775 A.2d 809 (2001).

**3.** Because this Court determines that the common pleas court erred when it accepted Bonifate's appeal and affirms the denial of the petition to vacate on that basis, this Court need not address the merits of Bonifate's appeal to this Court. Assuming arguendo, that

a review on the merits was conducted, this Court would affirm. This Court agrees with the common pleas court's determination that the arbitration award satisfied the essence test because the issue of whether Bonifate received credit for all years of service when he was placed on the permanent salary schedule was within the terms of the collective bargaining agreement and the arbitrator's award was rationally derived from the collective bargaining agreement.