**Karen RAY, Appellant**

v.

**BROOKVILLE AREA SCHOOL DISTRICT.**

Commonwealth Court of Pennsylvania.

Argued Nov. 9, 2010.
Decided March 28, 2011.

Tara E. Fertelmes, Pittsburgh, for appellant.

Thomas E. Breth, Butler, for appellee.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge LEAVITT.

Karen Ray appeals an order of the Court of Common Pleas of Jefferson County (trial court) that quashed her appeal of an arbitration award. The trial court held that the Collective Bargaining Agreement (CBA)[1] vested exclusive authority in the Brookville Area Education Association to appeal an arbitration award. Discerning no error in the trial court's interpretation of the CBA, we affirm.

■ Ray was employed as an elementary school teacher by the Brookville Area School District for the 2008–2009 school year. On April 23, 2009, the School District superintendent advised Ray that she was under investigation for misusing School District technology and equipment. The investigation concluded in the School

---

1. Collective Bargaining Agreement between Brookville Area School District and Brookville Area Education Association, July 1, 2004–June 30, 2013; Reproduced Record at 76a–144a.

District finding that Ray had violated the policy on proper use of School District technology by using unprofessional language in emails; had pursued an unprofessional relationship with the Director of Technology on School District property; and had engaged in non-work related activities during her work day. On May 15, 2009, Ray was given a *Loudermill* hearing[2] and then suspended without pay.

On May 22, 2009, the Association filed a Level III grievance on behalf of Ray, asserting that she had been suspended without just cause. After the School Board ruled against Ray, the Association submitted the grievance to arbitration. Arbitration hearings were conducted on September 9, 11, and 14, 2009, at which Ray was represented by Association-provided counsel. On January 4, 2010, the arbitrator ruled in favor of the School District.

Ray requested the Association to appeal on her behalf, but it declined her request. Ray then engaged her own legal counsel, and on February 3, 2010, she appealed the arbitration award. The Association intervened in the appeal.

▮ The School District filed a motion to quash Ray's appeal on the ground that she lacked standing under the CBA to appeal the arbitration award; it contended that only the Association was vested with that authority. The trial court agreed and granted the School District's motion to quash Ray's appeal. The trial court noted that although the CBA allowed Ray to choose her own counsel to represent her at a grievance, her choice had to be approved

by the Association. Further, and more importantly, the court concluded that Ray's right to represent herself in a grievance proceeding did not include the right to decide whether to appeal the arbitration award. The CBA conferred that right solely upon the Association. Ray now appeals to this Court.[3]

On appeal, Ray raises one issue. She contends that the trial court erred in its construction of the CBA, which gave her the explicit right to represent herself "at all stages of the grievance proceeding." An appeal of an arbitration award, Ray notes, is the final stage in a grievance proceeding. Ray concedes that the Association has the exclusive right to initiate arbitration but once it does so, she may appoint her own counsel to appeal the arbitration award. The School District and the Association respond that the Association's exclusive right to initiate arbitration proceedings necessarily includes the exclusive right to decide whether to appeal an arbitration award. They contend that Ray's right to represent herself in an appeal of an arbitration award is limited to the situation where the Association has agreed to the appeal.

We begin with a review of Article III of the CBA, entitled "Grievance Procedure." Section C, entitled "Procedure," identifies four grievance levels. Article III, Section C states, in relevant part, as follows:

3. **Level One**

*A professional employee with a grievance shall,* within fifteen (15) days after the alleged grievance, *submit the*

---

**2.** A *Loudermill* hearing is a pre-termination hearing given to a public employee that is required by due process, as established in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

**3.** This Court's standard of review of the trial court's order granting a motion to quash plaintiff's appeal is limited to whether the trial court committed an error of law, an abuse of discretion, or a violation of constitutional rights. *Cadonic v. Northern Area Special Purpose Schools*, 57 Pa.Cmwlth. 42, 426 A.2d 186, 189 (1981).

*same in writing to the principal.* The principal shall advise the employee of his disposition, in writing, within five (5) days after receipt of the grievance.

4. **Level Two—Superintendent**

*If the aggrieved person is not satisfied with the disposition of his grievance* at Level One or if no decision has been rendered within five (5) days after the presentation of the grievance at Level One, *the employee may file the grievance in writing with the Superintendent* or his designee within five (5) days after the decision at Level One or ten (10) days after the grievance was presented, whichever is sooner.

5. **Level Three—School Board**

*If the aggrieved person is not satisfied with the disposition of the grievance* by the Superintendent or his designee, or if no disposition has been made within five (5) days from the date of the filing at Level Two, *the grievance shall be transmitted to the Board* by filing a written copy thereof with the Secretary or other designee of the Board. The Board, no later than its next regular meeting or two (2) calendar weeks, whichever shall be later, must hold a hearing on the grievance.

6. **Level Four**

*If the Association is not satisfied with the disposition of the grievance at Level Three,* or if no decision has been rendered, *the Association may,* within five (5) days after the hearing or after the date on which the hearing was required to be held, *request in writing that the grievance be submitted to arbitration.*

a. Within ten (10) days after such written notice of submission to arbitration, the Board and the Association shall attempt to agree upon a mutually acceptable arbitrator and shall obtain a commitment from said arbitrator to serve.. If the parties are unable to agree upon an arbitrator, or to obtain such a commitment within the specified period, a request for a list of arbitrators may be made to the American Arbitration Association or the Pennsylvania Bureau of Mediation by either party. The parties shall then be bound by the rules and procedures of the American Arbitration Association or the Pennsylvania Bureau of Mediation, as may be appropriate, in the selection of an arbitrator.

b. The Arbitrator's decision shall be in writing and shall set forth his findings of fact, reasoning, and conclusions on the issues submitted. The arbitrator shall be without power or authority to make any decisions which require the commission of an act prohibited by law or which is violative of, or represents an addition to or deletion of, the terms of this Agreement. The decision of the arbitrator shall be submitted to the Board and the Association and shall be final and binding on the parties.

c. The costs for the services of the arbitrator, including per diem expenses, if any, and actual and necessary travel, and subsistence expenses shall be borne equally by the Board and the Association. Any other expenses incurred shall be paid by the party incurring same.

Article III, Section C, ¶¶ 3–6 (emphasis added); Reproduced Record at 86a–87a (R.R. ___). The "professional employee" is expressly authorized to initiate a Level One grievance by submitting the grievance in writing to the principal. If "not satis-

fied," the "aggrieved person," *i.e.*, professional employee, may take the grievance to Level Two and Level Three. There is a break, however, between Level Three and Level Four. Only the Association may "request in writing that the grievance be submitted to arbitration." R.R. 87a.

After explaining each of the four levels of the grievance procedure, Article III, Section C then addresses representation. It authorizes the union member to represent herself at "all stages" of the grievance procedure. It states as follows:

7. **Representation**

*An aggrieved person may be represented at all stages of the grievance procedure by himself or at his option by a representative selected or approved by the Association.* The parties shall make a good faith effort to conduct all meetings and other grievance processing at Levels One, Two, and Three during other than regular school hours. The aggrieved person or one authorized member in the case of an Association grievance, must be present, except in the case of a mutually agreed upon emergency, at Levels One, Two, and Three in which the grievance processing is conducted within the Brookville Area School District.

Article III, Section C, ¶ 7 (emphasis added); R.R. 88a.

We turn, then, to Ray's contention that the trial court erred in its interpretation of Article III of the CBA. Ray concedes that the Association has the exclusive right to initiate arbitration. However, she argues that once the Association agreed to take a grievance to the arbitration level, then, under Section 7, Ray was allowed to have her own representative appeal the arbitration. Otherwise, the right to represent herself "at all stages of the grievance procedure," including the appeal of an arbitra-tion award, would have no meaning. Ray asserts that the trial court's construction of the representation clause deprived her of the ability to represent herself in the arbitration appeal.

In response, the School District and the Association focus on Article III, Section C, ¶ 6 of the CBA, which authorizes only the Association to initiate arbitration. They contend that it necessarily follows that the Association retains the exclusive right to decide whether to appeal the arbitration award. They also argue that the representation clause does not confer standing on a member to appeal an arbitration award any more than it confers standing on a member to initiate arbitration. Had the Association chosen to appeal the arbitration award adverse to Ray, she could have chosen her own representative to handle the appeal. But the Association did not appeal. Simply, they argue that the right to choose a representative and the right to file an appeal are two different and independent subjects.

 The meaning of the CBA is governed by its language, as is the case for any written contract. *Kozura v. Tulpehocken Area School District,* 568 Pa. 64, 71, 791 A.2d 1169, 1174 (2002). The intention of the parties is the "paramount consideration." *Hutchison v. Sunbeam Coal Corporation,* 513 Pa. 192, 200, 519 A.2d 385, 389 (1986). Generally, collective bargaining agreements invest only the parties to the contract, *i.e.,* the union and the employer, with authority to initiate arbitration and to decide whether to appeal an adverse arbitration award. *Krenzelak v. Canon–McMillan School District,* 129 Pa. Cmwlth. 490, 566 A.2d 346, 347–348 (1989).

In *Krenzelak,* the grievant argued that Section 606 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, 43 P.S. § 1101.606, invested him with the

right to appeal an adverse arbitration ruling. Section 606 provides that individual employees or groups of employees

> shall have the right at any time to present grievances to their employer and to have them adjusted without the intervention of the bargaining representative *as long as the adjustment is not inconsistent with the terms of a collective bargaining contract* then in effect.

43 P.S. § 1101.606 (emphasis added). The CBA at issue in *Krenzelak* vested the union with exclusive authority to submit a grievance to arbitration, but it did not specify who could appeal an adverse arbitration award. We held that the union's exclusive contract right to initiate arbitration included the exclusive right to decide whether to appeal an arbitration award. Section 606 was held to be of no moment, inasmuch as the statute makes the CBA dispositive.

Our holding in *Krenzelak* was consistent with long-standing precedent that has recognized the sound policy reasons for placing arbitration decisions within the control of the union, not individual members. Allowing members to appeal an adverse arbitration award

> would lead to chaos and a breakdown in the entire scheme of collective bargaining for which the parties have provided and contracted. Instead of being able to rely on the disposition of employee grievances, through the established machinery, the Company would face the constant threat of attempted individual enforcement through litigation. Union responsibility would be diminished and all parties would suffer.

*McCluskey v. Department of Transportation*, 37 Pa.Cmwlth. 598, 391 A.2d 45, 49 (1978), *disapproved on other grounds, Offi-*

*cial Court Reporters v. Pennsylvania Labor Relations Board*, 502 Pa. 518, 536 n. 17, 467 A.2d 311, 320 n. 17 (1983) (plurality opinion).

In *Kozura*, 568 Pa. 64, 791 A.2d 1169, our Supreme Court recognized that parties may negotiate a contract that deviates from the principle that a union, not its members, should control the appeal of an arbitration award. In *Kozura*, the CBA expressly authorized the individual union member to initiate arbitration, and it gave that member the right to choose his representative at all stages of the grievance process.[4] Accordingly, the member, not the union, controlled each step of the grievance proceeding. Further, the union could participate in the grievance only where requested by the member. Given these provisions in the CBA, the Supreme Court found that Kozura, not the union, controlled the decision of whether to appeal an adverse arbitration award.

■ In this case, the CBA does not specify who can appeal an arbitration award; however, it gives the Association the exclusive right to initiate arbitration. *Kozura* is, thus, distinguishable. Accordingly, it is this Court's holding in *Krenzelak*, *i.e.*, that the exclusive power to initiate arbitration includes the exclusive authority to appeal, that is dispositive here.

We also reject Ray's contention that the trial court erred in relying upon *Kozura* and *Bonifate v. Ringgold School District*, 961 A.2d 246 (Pa.Cmwlth.2008). She makes this contention by arguing that the representation clause in her CBA makes *Kozura* and *Bonifate* distinguishable. We disagree.

**4.** Notably, the CBA in *Kozura*, unlike the CBA in this case, did not authorize the union to approve the representative.

As explained above, the CBA at issue in *Kozura* expressly provided that the grievance "may be referred to arbitration *by the Employee*" and gave the union "representative status [at the arbitration] solely at the employee's behest." *Kozura*, 568 Pa. at 72, 74, 791 A.2d at 1174, 1175 (emphasis added). It is true that the CBA also gave the union member the right to choose his representative at every stage of the grievance and arbitration proceeding; indeed, the union member did not need the union's approval of the choice of representative. However, the representation clause was not central to the Court's analysis. To the contrary, the Supreme Court based its holding in *Kozura* on the clause that gave the aggrieved employee the right to initiate arbitration, explaining that the exclusive right to initiate arbitration includes the exclusive right to decide whether to appeal the arbitration award.

In *Bonifate*, the union filed a grievance on behalf of a teacher not assigned to the correct payroll classification, and it represented the teacher through arbitration. The union decided not to appeal the arbitration award, prompting Bonifate to appeal on his own behalf. This Court reversed the trial court's decision to allow the appeal. We held that the CBA gave the union the sole right to initiate arbitration, explaining that

> [b]ecause Bonifate did not have the right to decide to arbitrate the grievance, it stands to reason that he did not have the ability to appeal the arbitration award to the common pleas court.

*Bonifate*, 961 A.2d at 253.[5] Ray argues that *Bonifate* is distinguishable because the CBA in question there did not, apparently, . contain a representation clause. Again, we disagree. The result would not have been different had the CBA in *Bonifate* contained a representation clause.

■ *Bonifate* cannot be distinguished from *Krenzelak*, or from this case. As established in *Krenzelak*, the exclusive power to initiate arbitration includes the exclusive power to decide whether to appeal an arbitration award. Here, the CBA authorizes the union member to initiate a grievance through Level Three but not beyond. Her argument in regard to the representation clause conflates the right to represent oneself with standing to appeal. They are different. Ray had the right to represent herself in an appeal of the arbitration award, had one been filed by the Association. However, the CBA unambiguously granted the Association the exclusive right to initiate arbitration and, thus, the exclusive right to decide whether to appeal the arbitration award.

For the foregoing reasons, we affirm the order of the trial court.

## ORDER

AND NOW, this 28th day of March, 2011, the order of the Court of Common Pleas of Jefferson County dated April 20, 2010, in the above-captioned matter is hereby AFFIRMED.

---

5. The issue of what was provided in the CBA with respect to self-representation was not raised in *Bonifate*.