J-S12025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSEPH C. NICHOLSON, | |
| Appellant | No. 855 EDA 2015 |

Appeal from the PCRA Order of February 20, 2015
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0000689-2010, CP-15-CR-0001301-2010, CP-15-CR-0001302-2010.

BEFORE:  MUNDY, OLSON AND STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                **FILED FEBRUARY 18, 2016**

Appellant, Joseph C. Nicholson, appeals *pro se* from the order entered on February 20, 2015, dismissing his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

We briefly set forth the facts and procedural history of this case as follows.  Appellant was a janitor working at Downingtown West High School in Chester County, Pennsylvania.  He was a well-known alumnus of the school having played quarterback for the football team.  Between September 2008 and January 2010, Appellant engaged in various acts of sexual misconduct with three minor female students, R.E., L.C., and D.H.[1]  Some of these acts occurred at Appellant's home, while other acts occurred at the

---

[1]  We use their initials to protect the victims' identities.

*Retired Senior Judge assigned to the Superior Court.

school as captured on surveillance video. Appellant also showed each of the three victims a photo of his penis. Following a two-day jury trial commencing on March 1, 2011, a jury convicted Appellant of four counts of corruption of minors, two counts of indecent assault, and one count each of statutory sexual assault, involuntary deviate sexual intercourse (IDSI), and aggravated indecent assault.[2] On July 22, 2011, the trial court sentenced Appellant to an aggregate term of 13 to 26 years of imprisonment. On October 12, 2012, this Court affirmed Appellant's judgment of sentence. *See Commonwealth v. Nicholson*, 62 A.3d 454 (Pa. Super. 2012) (unpublished memorandum). Appellant did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

On November 4, 2013, Appellant filed a timely[3] *pro se* PCRA petition. On November 15, 2013, the PCRA court appointed counsel to represent

_____

[2] 18 Pa.C.S.A. §§ 6301(a)(1), 3126(a)(8), 3122.1, 3123(a)(7), and 3125(a)(8), respectively.

[3] PCRA petitions must be filed within one year of the date the judgment becomes final. *See* 42 Pa.C.S.A. § 9545(b)(1). "[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(5). Although Appellant did not seek review with our Supreme Court, judgment did not become final until the 30-day period to appeal to the Supreme Court expired. *See* Pa.R.A.P. 1113(a) (petition for allowance of appeal to Supreme Court shall be filed within 30 days of order issued by Superior Court). Thus, Appellant's judgment of sentence became final on Monday, November 12, 2012. *See* 1 Pa.C.S.A. § 1908 (computation of time). Thus, Appellant's *pro se* PCRA petition, filed on November 4, 2013, was within the PCRA's one-year requirement.

Appellant. On December 26, 2013, appointed counsel filed a petition to withdraw and a "no-merit" letter pursuant to ***Commonwealth v Turner***, 544 A.2d 927 (Pa. 1988) and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). Appellant filed a *pro se* request for an extension of time to file an amended PCRA petition. The PCRA court granted the request; however, Appellant did not file an amended PCRA petition. Instead, Appellant's family retained an attorney who entered his appearance on January 31, 2014. At that time, retained counsel requested time to review the record, which the PCRA court granted. On May 2, 2014, retained counsel filed a petition to withdraw and a "no-merit" letter pursuant to ***Turner***/***Finley***.[4]

On May 7, 2014, the PCRA court entered notice of its intent to dismiss Appellant's PCRA petition without an evidentiary hearing pursuant to Pa.R.Crim.P. 907. Appellant filed a *pro se* response after the 20-day response period. ***See*** Pa.R.Crim.P. 907(1) ("The defendant may respond to the proposed dismissal within 20 days of the date of the notice."). In that response, Appellant largely reiterated the claims he set forth in his *pro se* PCRA petition and alleged retained counsel erroneously withdrew from representation. For the first time, in his untimely Rule 907 response,

---

[4] Although the exact dates are not made entirely clear by the record, the PCRA court first allowed appointed counsel to withdraw and later permitted retained counsel to withdraw.

- 3 -

Appellant claimed prejudice because of the racial composition of his jury. On February 20, 2015, the PCRA court entered an order dismissing Appellant's PCRA petition. This timely appeal followed.[5]

Appellant presents the following issues, *pro se*, for our review:

1. The court erred in dismissing Appellant's first, timely filed, *pro se* PCRA petition without an evidentiary hearing or the granting of [a] prayer for relief.

2. The court erred in granting PCRA counsel leave to withdraw pursuant to [a] ***Finley*** no-merit letter, where meritorious issues existed and where counsel failed to amend the PCRA petition.

3. PCRA counsel was ineffective for abdicating his duty to amend Appellant's first, timely filed *pro se* PCRA petition; for failing to address each and every issue raised in the *pro se* petition in counsel's no-merit letter; and where the court erred in granting leave to withdraw based upon that defective letter.

4. Appellant is entitled to PCRA relief pursuant [to] the utilization of self-incriminating evidence, illegally obtained through wire-taps, searches, coerced confession, and other police misconduct, in violation of the United States and Commonwealth Constitutions.

---

[5] Appellant placed his notice of appeal in the prison mailbox on March 18, 2015. A *pro se* prisoner's appeal shall be considered filed when notice of the appeal is deposited with prison officials or placed in the prison mailbox. ***See Commonwealth v. Feliciano***, 69 A.3d 1270 (Pa. Super. 2013) (pursuant to prisoner mailbox rule, notice of appeal in PCRA case was timely). Thus, Appellant filed his notice of appeal within the 30-day appeal period. ***See*** Pa.R.A.P. 903. On April 7, 2015, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant placed his Rule 1925(b) statement in the prison mailbox in a timely manner. The PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a) on May 15, 2015.

5. Appellant is entitled to PCRA relief pursuant to the utilization of self-incriminating evidence [that was] illegally obtained in violation of the poisonous tree doctrine during the **Loudermill** hearing.[6]

6. Appellant is entitled to PCRA relief [for] ineffective and layered ineffective assistance of counsel rendered during pre-trial, trial, post-trial, and PCRA legal proceedings.

7. The sentences imposed by the court were excessive, illegal, and an abuse of judicial discretion, in violation of Appellant's federal and state rights to due process.

8. The *voir-dire* process and jury pool were racially biased and defective, depriving Appellant of his right[] to a fair trial by an impartial jury of his peers.

9. The evidence is insufficient and the verdict contra[r]y to the weight of the evidence to [ob]tain [a] conviction for involuntary deviate sexual intercourse (IDSI).

10. The court erred in declaring that Appellant's issues were waived where waiver was the direct result of inef[f]ective and layered inef[f]ective assistance of counsel.

Appellant's Brief at 11 (complete capitalization, unnecessary punctuation, and quotations omitted) (italics and bold text supplied).

Upon review of Appellant's brief and the certified record, we conclude that Appellant waived several of the issues listed above as they were previously litigated or could have been raised on appeal. Appellant also

---

[6] "A **Loudermill** hearing is a pre-termination hearing given to a public employee that is required by due process, as established in **Cleveland Board of Education v. Loudermill**, 470 U.S. 532 (1985)." **Ray v. Brookville Area Sch. Dist.**, 19 A.3d 29, 31 n.2 (Pa. Cmwlth. 2011).

waived several issues for failing to preserve them properly. Two of Appellant's issues lack merit. Thus, there is no merit to Appellant's first, sixth, or tenth claims. Our rationale follows.

Our Supreme Court has set forth our well-settled standard of review as follows:

> In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error. To be entitled to PCRA relief, appellant must establish, by a preponderance of the evidence, his conviction or sentence resulted from one or more of the enumerated errors in 42 Pa.C.S. § 9543(a)(2), his claims have not been previously litigated or waived, and the failure to litigate the issue prior to or during trial, or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel. An issue is previously litigated if the highest appellate court in which appellant could have had review as a matter of right has ruled on the merits of the issue. An issue is waived if appellant could have raised it but failed to do so before trial, at trial, on appeal or in a prior state post-conviction proceeding.
>
> Counsel is presumed effective, and appellant bears the burden of proving otherwise. To prevail on an ineffectiveness claim, appellant must establish:
>
> > (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) appellant suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.
>
> Failure to prove any prong of this test will defeat an ineffectiveness claim. If a claim fails under any necessary element of the [aforementioned three-pronged] test, the court may proceed to that element first. When an appellant

fails to meaningfully discuss each of the three ineffectiveness prongs, he is not entitled to relief, and we are constrained to find such claims waived for lack of development. Further, counsel cannot be deemed ineffective for failing to raise a meritless claim.

***Commonwealth v. Fears***, 86 A.3d 795, 803-804 (Pa. 2014) (quotations, footnotes, original brackets, ellipses, and most internal citations omitted).

In issues two and three, Appellant claims the PCRA court erred in granting both PCRA attorneys leave to withdraw because meritorious issues existed, counsel failed to amend the PCRA petition, and, instead, counsel filed ***Turner/Finley*** no-merit letters. Appellant's Brief at 2-6. Our Supreme Court has held that a defendant waives any objection to PCRA counsel's representation by not responding to a ***Turner/Finley*** letter or during the 20-day response period under Pa.R.Crim.P. 907. ***See Commonwealth v. Pitts***, 981 A.2d 875, 879 n.2 and 3 (Pa. 2009) ("failure to challenge PCRA counsel's withdrawal upon his receipt of counsel's no-merit letter" or "during Rule 907's 20-day response period" results in waiver.). Upon review of the certified record, Appellant did not file a response to either appointed or retained counsel's no-merit letters. Moreover, Appellant did not file a Rule 907 response within the 20-day response period and, thus, it was untimely. More specifically, upon review of the record, the PCRA court filed its Rule 907 notice on May 7, 2014; Appellant signed a certificate of service, attached to his response to the PCRA court's Rule 907 notice, indicating that he placed the response in the prison mailbox on July 4, 2014. Fifty-eight

days transpired which is clearly outside of the 20-day period under Rule 907.

Thus, Appellant waived his second and third issues as presented.[7]

In his fourth issue presented, Appellant contends that police illegally wiretapped a conversation between victim R.E.'s mother and Appellant. While Appellant concedes that the information obtained from the wiretap was not "directly use[d] … during the [police] interrogation or at trial," he contends that "Officer Trautmann used [the wiretapped conversation] like a weapon to force R.E. to cooperate, knowing that without her testimony he had no case." **Id.** at 9. More specifically, Appellant maintains that "[j]ust because Officer Trautmann did not mention the wiretap [] does not mean that he did not indirectly use the wealth of sel[f]-incriminating information obtained in [that] event[] to his advantage." **Id.** at 12. As such, Appellant claims police "manipulated the evidence, indirectly using evidence unlawfully

---

[7] Regardless, upon review, both attorneys followed the proper procedure for withdrawing under **Turner**/**Finley**:

> Counsel petitioning to withdraw from PCRA representation must proceed under [**Turner**/**Finley**] and must review the case zealously. **Turner**/**Finley** counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

**Commonwealth v. Doty**, 48 A.3d 451, 454 (Pa. Super. 2012) (citation omitted).

obtained, that would render Appellant's alleged confession unconstitutional." *Id.* at 9 (emphasis omitted). He claims that "[d]espite being 'Mirandized,' he knew that he would not leave the station a free man." *Id.* at 11. Appellant claims retained counsel was ineffective for stating in his no-merit letter that "whatever **legal improprieties** there may have been with respect to the recording of [Appellant's] conversation with [R.E.'s mother]" they were immaterial "because the evidence pertaining to this recording was never introduced to the jury at trial." *Id.* at 8 (emphasis in original). Accordingly, Appellant avers that trial counsel was ineffective for failing to seek suppression of his statements to police. He also indirectly suggests retained PCRA counsel was ineffective when he stated that there were "legal improprieties" with the wiretap, but then filed a no-merit letter stating that there were no meritorious issues.

Upon review of the record, on February 15, 2011, Appellant filed a counseled motion to suppress evidence asserting that, "[d]uring the course of the investigation, law enforcement recorded a conversation between [R.E.'s mother] and [Appellant]." Motion to Sup[p]ress Evidence, 2/15/2011, at 1, ¶2. The thrust of Appellant's claim was that he believed his conversation was private and the Commonwealth was prohibited from recording such conversations. *Id.* at 1-2, ¶5. Appellant also argued that the Commonwealth violated the Wiretap Act "by failing to obtain proper paperwork" and "utilizing law enforcement not authorized under the [Wiretap A]ct." *Id.* at 2, ¶6.

On February 24, 2011, following argument, the trial court entered an order denying relief. Appellant did not appeal that determination on direct appeal. Thus, this suppression issue was previously litigated prior to trial and then waived because it could have been raised on direct appeal.

On this issue, however, in his *pro se* PCRA petition, Appellant also alleges that trial counsel provided "gross negligence … in his representation of [Appellant] at **all** phases of trial." PCRA petition, 11/4/2013, at 3, ¶5(c). Thus, we will examine whether direct appeal counsel was ineffective for failing to litigate the issue on direct appeal and whether retained PCRA counsel was ineffective for failing to raise the issue on collateral review. The PCRA court determined Appellant was not entitled to relief, because his claim lacks merit:

> Following a hearing, [the trial court] denied [Appellant's] motion to suppress his recorded admissions; however, **the Commonwealth did not use the wiretap at trial**. Nonetheless, Appellant claims its nonuse does not prove that the information thus obtained by police was not used against him. [Appellant] does not identify the precise evidence to which he objects, or whether and to what extent, if at all, such evidence was used against him at trial. Rather, he argues that any information so obtained was available to and implicit in information furnished to police who investigated the allegations against him. He thus claims that any evidence garnered by the police based upon their knowledge of his prior admissions [] should have been excluded.

[Appellant] confessed his culpability to police during non-threatening questioning after full **Miranda**[8] warnings, and substantially admitted his culpability when he testified in his own defense at trial. Each of his teenage victims testified against him at his trial, including the victim whose mother spoke with Appellant during the recorded, wiretapped conversation.

* * *

Instantly, there is no Fourth or Fifth Amendment violation of [] Appellant's rights, since the wiretap evidence was legally obtained, and, importantly, Appellant was not compelled to be a witness against himself during the wiretap, having initiated the contact with the victim's mother. There was no interrogation by police during the wiretap. There is no arguable Sixth Amendment right to counsel violation, since the recorded conversation took place on February 4, 2010, over a month before [Appellant] was arrested on March 11, 2010.

PCRA Court Opinion, 5/15/2015, at 10-12 (emphasis in original).

Upon review, we agree with the PCRA court's assessment and discern no abuse of discretion or error of law. As Appellant concedes, the police did not use the information gleaned from the wiretapped conversation directly against him during police interrogation or at his trial. We have confirmed this information in our review of Officer Trautmann's trial testimony. Appellant was advised of his **Miranda** rights and he signed a consent form before giving a confession. N.T., 3/1/2011, at 157-158. The video-

---

[8] **Miranda v. Arizona**, 384 U.S. 436 (1969). As a general rule, the prosecution may not use statements, whether inculpatory or exculpatory, stemming from a custodial interrogation of a defendant unless it demonstrates that he was apprised of his right against self-incrimination and his right to counsel. **See Miranda**, 384 U.S. at 444.

recorded police interview was shown to the jury.  *Id.* at 159.  Moreover, at trial, Appellant admitted that he had "sexual intercourse – vaginal intercourse" with the subject of the wiretapped conversation, victim R.E.  N.T., 3/2/2011, at 77.  Additionally, throughout Appellant's *pro se* appellate brief, Appellant admits culpability for the sexual acts referenced in the wiretapped conversation.  **See** Appellant's Brief at 7 ("innocent flirtations crossed the line of appropriateness.  One relationship in particular, the one with 'R.E.' went too far, and [Appellant] found himself in a consentual [sic] **sexual** relationship with her.") (emphasis supplied); **id.** at 30 ("Yes, Appellant admitted his culpability for the offenses he committed").  As such, there is no merit to Appellant's claim that trial counsel should have challenged Appellant's statements to police.  In turn, PCRA counsel cannot be ineffective for failing to raise the issue on collateral review.

Finally, we note there is no reference appearing anywhere in the record, and Appellant has not provided any, as to when the wiretap was actually conducted.  The date of the wiretap is not listed in the transcript of the recorded conversation, Appellant's *pro se* PCRA petition, Appellant's motion to suppress, either of PCRA counsels' no-merit letters, or in Appellant's *pro se* appellate brief.  As such, Appellant has not provided evidence that police conducted the wiretap **before** the victims gave "coerced" statements to police as he alleged.  Thus, for this additional reason, Appellant has not provided evidence to support his current claim.

Next, in his fifth issue presented, Appellant claims that police used self-incriminating evidence from a ***Loudermill*** hearing to coerce his confession. Appellant's Brief at 13-16. Essentially, Appellant claims that at his ***Loudermill*** hearing "[h]e made several self-incriminating statements concerning dates and times he was with 'R.E.,' which law enforcement officers should not have been permitted to [use for investigative purposes] because they were involuntarily given under the continuing threat of job and career termination." ***Id.*** at 15.

Regarding Appellant's claim pertaining to his ***Loudermill*** hearing, the PCRA court determined:

> [Appellant] contends that the [Downingtown] School Board's hearing "was [transformed] into an illegal fishing expedition benefiting the Commonwealth with a treasure trove of illegally obtained incriminating evidence" against him. As discussed by retained counsel in his "no-merit" letter, Appellant was warned at the inception of the School Board hearing, that he had the right to counsel and that any statements he made could be used against him. Appellant did not invoke his Fifth Amendment right. At trial, John Nodecker, the principal of Downingtown West High School testified that he was present at Appellant's ***Loudermill*** hearing. At that hearing, Appellant was informed of some of the evidence that had been independently developed by the School District respecting his encounters with female students, particularly with respect to one of the victims, who at the time was uncooperative; however, Mr. Nodecker further testified that **Appellant denied any sexual conduct with that victim or other wrongdoing**. [Appellant] thereafter resigned his position with the School District without further hearings being conducted by the School Board.
>
> \*         \*         \*

- 13 -

> Contrary to Appellant's [p]etition, the record in this case does not support his averment that he disclosed incriminating evidence at the ***Loudermill*** hearing. Rather, he denied any allegations of wrongdoing. The evidence used to convict Appellant was developed independently by the police during their investigation, as spread upon the trial record, including the trial testimony of his victims. Appellant's claim is meritless.

PCRA Court Opinion, 5/15/2015, at 12-14 (emphasis in original).

Upon review, we agree. There is no merit to Appellant's claim that counsel was ineffective. According to Principal Nodecker, Appellant did not admit culpability at the ***Loudermill*** hearing. N.T., 3/1/2011, at 123-124. Moreover, Appellant was not terminated due to his testimony at the ***Loudermill*** hearing; instead, "[h]e resigned his position" soon thereafter. ***Id.*** at 125.

Furthermore, Appellant claims that police used his admission that he was with R.E. on one of the nights in question, as revealed at his ***Loudermill*** hearing, to then coerce Appellant to inculpate himself. However, upon review of the record, Officer Trautmann testified that he interviewed R.E. on February 1, 2010, a day **before** Appellant's ***Loudermill*** hearing. ***Id.*** at 142. While R.E. denied having sex with Appellant in that interview, Officer Trautmann testified as follows:

> We began to discuss the incidents – or the night of the 17th into the 18th [of January 2010], which would be a Sunday into a Monday. She admitted to going out of the house[,] leaving her cousin's house. She admitted going over to [Appellant's] house. She used the word initiating a lot. She said she initiated going over there. She said she initiated hugging, she initiated kissing, she tried to initiate sex with [Appellant].

- 14 -

***Id.*** at 143.

As the foregoing demonstrates, Appellant's claim that the police used information gleaned from the ***Loudermill*** hearing against him in a subsequent police interview lacks merit. Police had the same information, *i.e.*, that Appellant was with R.E. on the night in question, from interviewing the victim directly. This information was available to the police **prior** to Appellant's statements at the ***Loudermill*** hearing. As such, counsel cannot be deemed ineffective for failing to raise a meritless issue. Thus, Appellant's fifth issue fails.

Appellant's seventh issue, wherein he argues that the trial court abused its discretion by imposing an excessive sentence because of its consecutive nature, was previously litigated on direct appeal. ***See Commonwealth v. Nicholson***, 62 A.3d 454 (Pa. Super. 2012) (unpublished memorandum denying Appellant's claims on direct appeal) at *12-14.

In his eighth issue presented, Appellant challenged the racial composition of his jury for the first time in his untimely response to the PCRA court's Rule 907 notice, and, hence it is waived for the same reasons as his second and third issues.[9]

---

[9] Moreover, our Supreme Court has stated:

We have stressed that a claim not raised in a PCRA petition cannot be raised for the first time on appeal. We have

Finally, in his ninth issue, Appellant claims the evidence at trial was insufficient, or contrary to the weight of the evidence, to sustain his conviction for IDSI. Appellant failed to raise this issue in his court-ordered Rule 1925(b) concise statement of errors complained of on appeal and it is waived. *See Commonwealth v. Hill*, 16 A.3d 484, 494 (Pa. 2011) ("In order to preserve their claims for appellate review, appellants must comply whenever the trial court orders them to file a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925. Any issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived.").

Having found Appellant failed to plead and prove any meritorious issues or counsel's ineffective assistance, at any level, we reject Appellant's sixth and tenth issues that generally allege ineffective and layered ineffective assistance of counsel. Likewise, we conclude that Appellant was not entitled to an evidentiary hearing. "There is no absolute right to an evidentiary hearing." *Commonwealth v. Burton*, 121 A.3d 1063, 1067 (Pa. Super. 2015) (*en banc*) (citation omitted). "On appeal, we examine the

*(Footnote Continued)* ────────────

> reasoned that permitting a PCRA petitioner to append new claims to the appeal already on review would wrongly subvert the time limitation and serial petition restrictions of the PCRA. The proper vehicle for raising [a belated] claim is … a subsequent PCRA petition.

*Commonwealth v. Santiago*, 855 A.2d 682, 691 (Pa. 2004) (internal citations, quotations and original brackets omitted); *see also* Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

issues raised in light of the record to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing." *Id.* As the abovementioned analysis demonstrates, there were no genuine issues of material fact requiring an evidentiary hearing. As such, Appellant's first issue lacks merit. Accordingly, Appellant is not entitled to relief.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/18/2016