525 LANCASTER AVE APTS,
LP, Appellant

v.

BERKS COUNTY BOARD OF ASSESS-
MENT APPEALS, Berks County,
Reading School District, City of Read-
ing.

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2014.
Decided March 20, 2015.

■■■■■■■■■■■■

Sean E. Summers, Wyomissing, for appellant.

Edwin L. Stock, Reading, for appellees.

BEFORE: DAN PELLEGRINI, President Judge, and BONNIE BRIGANCE LEADBETTER, Judge, and ROBERT SIMPSON, Judge, and PATRICIA A. McCULLOUGH, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge LEADBETTER.

525 Lancaster Ave Apts, L.P. (Taxpayer) appeals from the order of the Court of Common Pleas of Berks County granting the Berks County Board of Assessment Appeals' motion to dismiss Taxpayer's real estate tax assessment appeal as moot. In doing so, common pleas concluded that the grant of a subsequent tax exemption under the Local Economic Revitalization Tax Assistance Act (LERTA)[1] for certain improvements made to Taxpayer's property

rendered Taxpayer's earlier appeal from the interim assessment following the same improvements moot.[2] We reverse and remand for further proceedings.

Taxpayer owns an apartment building in the City of Reading, which it apparently renovated. In June 2012, Taxpayer submitted an application to the City for tax abatement under the City's LERTA ordinance (commonly referred to as the "Reading LERTA Ordinance") (RLO). *See* City's Code of Ordinances, Ch. 24, Part 7B.[3] On September 27, 2012, the Board issued Taxpayer an interim assessment (denominated a "Change Notice"), stemming from "Renovation/Remodeling" of Taxpayer's property. Reproduced Record (R.R.) at 10a. This notice indicated that the prior assessment of $870,000 was increased to $4,536,700 ($553,600 attributable to land, and $3,983,100 attributable to building). Taxpayer appealed this interim assessment to the Board, which ultimately denied the appeal and affirmed the assessment.[4] Consequently, in December 2012, Taxpayer appealed the Board's assessment to common pleas, contending that the assessment was not commensurate with the property's fair market value. Thereafter, by notice dated January 29, 2013, the

---

1. Act of December 1, 1977, P.L. 237, *as amended*, 72 P.S. §§ 4722–4727.

2. LERTA authorizes local taxing authorities to exempt from taxation new construction and improvements to certain deteriorated industrial, commercial and other business property. *See* Section 2 of LERTA, 72 P.S. § 4723. Section 4(a) of LERTA provides, in pertinent part:

> Each local taxing authority may by ordinance or resolution exempt from real property taxation the assessed valuation of improvements to deteriorated properties and the assessed valuation of new construction within the respective municipal governing bodies designated deteriorated areas of economically depressed communities in the amounts and in accordance with the provisions and limitations hereinafter set forth.

72 P.S. § 4725(a).

3. On August 26, 2013, the City's Code was renumbered and reorganized. Chapter 24, Part 7B now appears in the Reading Code, Part II, Chapter 543, Part 2. *See also* http://www.readingpa.gov/new-ordinances-and-resolutions-2012.

4. In completing the pre-printed appeal form, Taxpayer averred that its opinion of the property's value was: "400,000 land and 3,124,-000 Bldg." R.R. at 8a. In response to the question regarding the reasons for appealing, Taxpayer averred: "We feel the assessed alue [sic] does not accurately reflect the Fair Market Value of the subject property. The current assessment as an apartment complex is higher than the assessment for when the property was condominiums." *Id.* at 9a.

Board notified Taxpayer that its assessment was reduced effective October 1, 2010, as follows:

OLD ASSESSMENT: $4,536,700
NEW ASSESSMENT: $870,000
CHANGE AMOUNT: $3,666,700–

R.R. at 42a. The notice further stated:

REDUCTION GRANTED DUE TO THIS PROPERTY BEING ACCEPTED INTO THE CITY OF READING ABATEMENT PROGRAM. A NOTICE WILL BE MAILED PRIOR TO THE NEXT INCREASE WHILE THE PROPERTY IS UNDER ABATEMENT.

. . . .

THIS CHANGE MAY BE APPEALED TO THE BOARD OF ASSESSMENT APPEALS WITHIN 40 CALENDAR DAYS FROM THE MAILING DATE OF THIS NOTICE. *THE APPEAL IS LIMITED TO THE AMOUNT OF THE CHANGE ONLY.*

*Id.* (emphasis added). Taxpayer did not appeal the January 29 notice.

The Board subsequently filed a motion to dismiss Taxpayer's appeal from the initial assessment on the basis that the appeal now pending before common pleas was moot due to the January 29, 2013, reassessment. Common pleas granted the motion, opining in pertinent part:

As is clear from Section 4727 [of LERTA], the abatement action calls for a separate assessment and is considered a reassessment. As the Board urges, the October 2012 interim assessment was superseded by the January 29, 2013 reassessment. Taxpayer's property is no longer being taxed in accordance with the 2012 interim assessment. The within appeal, therefore, no longer has any practical significance.... Taxpayer's proper recourse would have been to file an appeal from the reassessment of January 29, 2003.

Common pleas' Decision and Order at 4 (dated November 21, 2013). This appeal followed.

Prior to addressing Taxpayer's arguments, it is helpful to set forth the relevant provisions of LERTA. Section 6(a), entitled "Procedure for obtaining exemption," provides:

Any person desiring tax exemption pursuant to ordinances or resolutions adopted pursuant to this act, shall notify each local taxing authority granting such exemption in writing on a form provided by it submitted at the time he secures the building permit, or if no building permit or other notification of new construction or improvement is required, at the time he commences construction. A copy of the exemption request shall be forwarded to the board of assessment and revision of taxes or other appropriate assessment agency. The assessment agency shall, after completion of the new construction or improvement, assess separately the new construction or improvement and calculate the amounts of the assessment eligible for tax exemption in accordance with the limits established by the local taxing authorities and notify the taxpayer and the local taxing authorities of the reassessment and amounts of the assessment eligible for exemption. Appeals from the reassessment and the amounts eligible for the exemption may be taken by the taxpayer or the local taxing authorities as provided by law.

72 P.S. § 4727(a). Section 5, entitled, "Exemption schedule," provides in turn:

(a) A local taxing authority granting a tax exemption pursuant to the provisions of this act may provide for tax exemption on the assessment attributable to the actual cost of new construction or improvements or up to any maximum cost uniformly established by the municipal governing body....

(b) Whether or not the assessment eligible for exemption is based upon actual cost or a maximum cost, the actual amount of taxes exempted shall be in accordance with the schedule of taxes exempted established by a local taxing authority subject to the following limitations:

(1) The length of the schedule of taxes exempted shall not exceed ten years.

(2) The schedule of taxes exempted shall stipulate the·portion of new construction or improvements to be exempted each year.

(3) The exemption from taxes shall be limited to the additional assessment valuation attributable to the actual costs of new construction or improvements to deteriorated property or not in excess of the maximum cost per unit established by a municipal governing body....

72 P.S. § 4726.

Pursuant to this legislative authority, the City enacted the RLO. Generally, as authorized above, the RLO exempts the portion of an assessment attributable to certain new construction or improvements, which have been made to deteriorated property. *See* RLO § 24–724. Section 24–724–2 states in pertinent part:

· In all cases, the exemption from real estate taxes shall be limited to that portion of the additional assessment attributable to the actual cost of the improvement to deteriorated property for which a separate assessment has been made by the Berks County Board of Assessment Appeals and for which an exemption has been separately requested, and for the assessed valuation of new construction....

According to the enacted exemption process, once the new construction or improvement is completed, the Board is charged with reassessing the property, separately assessing the new construction and improvements and calculating the amount of the assessment eligible for tax exemption. RLO § 24–726–3. Specifically:

The Board shall, after the new construction or improvement to deteriorated property is completed, assess the new construction or assess the improvement separately and . calculate the amount of the assessment eligible for tax exemption ... and notify the taxpayer and the City of the reassessment and the amount of the assessment eligible for exemption. All abatements shall begin following notification to the City from the Board of an increase in the assessment attributable to the improvement or the new construction[.] Appeals from the reassessment in the amounts determined to be eligible for the exemption may be taken by the taxpayer or the City as provided by law.

*Id.* The portion of the assessment subject to exemption is prorated over a ten year period, with the entire portion exempt in the first year and decreasing by 10% each year thereafter. RLO § 24–725–1. After the tenth year, the exemption terminates. *Id.* We now turn to the arguments raised on appeal.

■ On appeal, Taxpayer maintains that its appeal is not moot because it is not challenging its entry into the LERTA program. It further maintains that the Board's LERTA assessment is not a new, separate assessment; rather, it represents a percentage of the interim assessment of $4,546,700 that it had initially challenged. While not expressly stated, it is clear that Taxpayer is not challenging the portion of its improvements deemed eligible for exemption; it is challenging the overall valuation of its property, from which the LERTA assessment was derived.[5]

---

**5.** Clearly, the Board's notice fails to comply with both Section 6(a) of LERTA, 72 P.S.

In support of their position that the January 2013 LERTA assessment superseded the October 2012 interim assessment, requiring a new appeal, Berks County and the Board (collectively, Board) contend:

> While the LERTA schedule of assessments for the ten year period may initially have been derived from the October 2012 Interim assessment, once the schedule of assessments under LERTA is "set" it is "set," unless the taxpayer appeals following receipt of the first LERTA notice. Thus, even if the Taxpayer['s] appeal was permitted to go forward and the [$]4,536,700 assessment was reduced, it still would not change the LERTA schedule of assessments that the Taxpayer accepted when it did not file an appeal of the LERTA reassessment following receipt of the January 29, 2013 Notice that the property was accepted into the [City's] Abatement Program.

Board's Brief at 11.

We conclude that the Board's position is inconsistent with the City's LERTA scheme and the manner in which this court has construed Section 8854(a)(5) of the Consolidated County Assessment Law, 53 Pa.C.S. § 8854(a)(5), which provides that any assessment subsequent to the filing of an assessment appeal is automatically appealed.

■ First, the RLO clearly contemplates that the underlying assessment of a property subject to a LERTA exemption may be subsequently reduced. Section 24–727 provides:

> § 4727(a) and RLO § 24–726–3. While the October 2012 interim assessment set forth the new assessment post renovation/improvement, separating the assessment into land and building values, the Board's LERTA notice fails to specifically designate the portion of the new assessed value attributable to the new

In the event that the taxpayer shall received [sic] by whatever means, a reduced assessment with regard to part or all of his, her or its property which is currently the subject of the tax exemption provided in this Part, such reduced assessment shall be applied proportionately to the portion of the assessed value which is subject to a tax exemption and the portion of the assessed value which is not subject to a tax exemption, and shall result in a reduction of tax exemption which was initially granted for purposes of the number of exemption years still remaining on the exemption schedule.

Thus, pursuant to this provision, a taxpayer may still seek to challenge the overall assessed value of its property; the grant of a LERTA exemption does not set the property's assessment value in stone during the exemption period. The 2013 LERTA notice sent to Taxpayer recognizes this right as well in that it clearly specified that any appeal therefrom was limited to the amount of the change only. Thus, the City's LERTA scheme did not provide for nor allow the total assessed value of the property to be addressed in the context of a LERTA appeal. Accordingly, we conclude that Taxpayer's appeal of the interim assessment was not rendered moot by the grant of a LERTA exemption.

■ Our conclusion in this regard is also consistent with Section 8854(a)(5) of the Consolidated County Assessment Law, *as amended*, 53 Pa.C.S. § 8854(a)(5), which states:

> If a taxpayer or taxing district has filed an appeal from an assessment, *so long*

improvements, only setting forth the total value of the "old assessment" and providing the new assessed value of $870,000. Presumably, the "change amount" of $3,666,700 is that portion of value deemed attributable to the improvements and subject to the ten year exemption schedule.

*as the appeal is pending* before the board or before a court on appeal from the determination of the board, as provided by statute, the appeal will also be taken as an appeal by the appellant on the subject property for *any valuation for any assessment subsequent to the filing of an appeal* with the board and prior to the determination of the appeal by the board or court. *This provision shall be applicable to all pending appeals as well as future appeals.*

Section 8854(a)(5) (emphasis added). In *Appeal of P–Ville Associates*, 87 A.3d 898 (Pa.Cmwlth.2014), this court reiterated that the automatic appeal provision of Section 8854(a)(5) is intended to eliminate duplicative, precautionary tax appeals and "not to act as a trap by which taxpayers can be deprived of their opportunity to be heard." *Id.* at 903. In light of this well-accepted purpose and a review of the cases discussing the "appeal pending" requirement of Section 8854(a)(5), the court in *P–Ville Associates* concluded that an appeal is pending before common pleas as long as the court has jurisdiction to grant a final order disposing of the matter (in that case the grant of a motion to quash the appeal as untimely). *Id.* In such cases, subsequent tax assessments are automatically appealed, have a separate status, and continue to exist notwithstanding the dismissal of the original assessment appeal.[6] *Id.*

6. In *P–Ville Associates*, the taxpayer sought to appeal *nunc pro tunc* its 2011 interim assessment; the board denied the appeal and the taxpayer timely appealed to the court of common pleas. While the appeal was pending before common pleas, the taxpayer's property was assessed for tax year 2013; taxpayer did not appeal the 2013 assessment. The court of common pleas ultimately dismissed the untimely 2011 assessment appeal and further concluded that since the taxpayer never perfected an appeal of the 2011 assessment, the 2013 assessment was not automatically appealed under Section 8854(a)(5). We disagreed and reversed on appeal.

While *P–Ville* did not involve an appeal under LERTA, in light of the perceived purpose of Section 8854(a)(5) and the broad language contained therein, providing that it applies to "*any valuation for any assessment* subsequent to the filing of any appeal," we conclude that not only was Taxpayers' appeal not moot, but it served to appeal the assessment set forth in the LERTA notice, rendering a separate appeal unnecessary.

Based upon the foregoing, we reverse and remand for further proceedings regarding Taxpayer's appeal.

### ORDER

AND NOW, this 20th day of March, 2015, the order of the Court of Common Pleas of Berks County in the above-captioned matter is REVERSED and the matter is REMANDED for further proceedings in the underlying assessment appeal.

Jurisdiction relinquished.

DISSENTING OPINION BY President Judge PELLEGRINI.

I respectfully dissent because the majority allows an appeal from an assessment made under the Consolidated County Assessment Law[1] to determine fair market value to act as an appeal from an assessment made under the Local Economic Revitalization Tax Assistance Act (LERTA)[2]

1. 53 Pa.C.S. §§ 8801–8868.

2. Act of December 1, 1977, P.L. 237, *as amended*, 72 P.S. §§ 4722–4727. Section 4(a) of LERTA provides, in relevant part:

    Each local taxing authority may by ordinance or resolution exempt from real property taxation the assessed valuation of improvements to deteriorated properties and the assessed valuation of new construction within the respective municipal governing bodies designated deteriorated areas of economically depressed communities in the amounts and in accordance with the provisions and limitations hereinafter set forth.

for different purposes and involving different calculations.

In September 2012, 525 Lancaster Ave Apts, LP (Taxpayer) received a $4,536,700 real property tax assessment for a 71–unit apartment building (property) in the City of Reading (City) that Taxpayer rehabbed. Taxpayer appealed the assessment to the Berks County Board of Assessment Appeals (Board) and, following a hearing, the Board issued a final notice on November 28, 2012, upholding the assessed value of $4,536,700. Taxpayer appealed the Board's decision to the Court of Common Pleas of Berks County (trial court) arguing that the assessment is not commensurate with the property's fair market value. Normally, such an appeal would act to appeal all subsequent assessments made in future years from a determination of fair market value under Section 8854(a)(5) of the Consolidated County Assessment Law.[3]

While all this was going on, the City was processing Taxpayer's LERTA application for a tax exemption on its property. On January 29, 2013, the Board notified Taxpayer that its property was accepted into the City's LERTA program, thereby reducing the property's assessment from $4,536,700 to $870,000 effective October 1, 2012. Section 6(a) of LERTA provides that "[a]ppeals from the reassessment and the amounts eligible for the exemption may be taken by the taxpayer or the local taxing authorities as provided by law." 72 P.S. § 4727(a). Taxpayer did not appeal the Board's January 29, 2013 LERTA assessment.

The Board filed a motion to dismiss Taxpayer's appeal of the initial assessment on the basis that the appeal was moot due to the January 29, 2013 reassessment which the trial court granted and cogently explained:

As is clear from Section [6 of LERTA], the abatement action calls for a separate assessment and is considered a reassessment. As the Board urges, the October 2012 ... assessment was superseded by the January 29, 2013 reassessment. Taxpayer's property is no longer being taxed in accordance with the 2012 interim assessment. The within appeal, therefore, no longer has any practical significance.... Taxpayer's proper recourse would have been to file an appeal from the reassessment of January 29, [2013].

(Trial Court's November 21, 2013 Decision at 4).

The majority finds that the appeal is not moot because the Board's LERTA assessment is based on a percentage or derivative of the underlying assessed value, and that value is "not set in stone during the exemption period" so, of course, an appeal from the underlying assessment remains in place because it is a component of the LERTA assessment, and if it is reduced, so is the LERTA assessment. As support for that proposition that it is "not set in stone," it relies on § 24–727 of the City's LERTA Ordinance (RLO) which provides:

In the event that the taxpayer shall received [sic] by whatever means, a reduced assessment with regard to part or

the appeal will also be taken as an appeal by the appellant on the subject property for any valuation for any assessment subsequent to the filing of an appeal with the board and prior to the determination of the appeal by the board or the court. This provision shall be applicable to all pending appeals as well as future appeals.

72 P.S. § 4725(a).

**3.** 53 Pa.C.S. § 8854(a)(5). Section 8854(a)(5) provides:

If a taxpayer or taxing district has filed an appeal from an assessment, so long as the appeal is pending before the board or before a court on appeal from the determination of the board, as provided by statute,

all of his, her or its property which is currently the subject of the tax exemption provided in this Part, such reduced assessment shall be applied proportionately to the portion of the assessed value which is subject to a tax exemption and the portion of the assessed value which is not subject to a tax exemption, and shall result in a reduction of tax exemption which was originally granted for purposes of the number of exemption years still remaining on the exemption schedule.

I disagree with the majority because the LERTA assessment is made under LERTA, not the Consolidated County Assessment Law, which is calculated differently than the fair market value assessment under the General County Assessment Law[4] in that that assessment involves many factors and different calculations than just fair market value. It is so different that the General Assembly requires a taxpayer who disagrees with the LERTA assessment to take a separate appeal and it is so different that automatic appeal provisions do not apply. Let me explain.

The LERTA ordinance requires the Board "to assess the new construction or assess the improvement separately and calculate the amount of the assessment eligible for tax exemption." RLO § 24–726–3. Under Section 6(a) of LERTA, that calculation does not take out of the fair market value attributable to those improvements but only the "actual cost" of the improvement or "maximum amount" allowed for exemption. 72 P.S. § 4727(a). Moreover, once the LERTA assessment, either after an appeal or failure to appeal the LERTA assessment, the cost of construction and the amount of exemption is fixed. While the underlying fair market value can be reduced in future years under RLO § 24–727–1, there is a proportionate reduction in the tax exemption so for all

intents and purposes such an appeal will not be taken.

The LERTA assessment simply supplanted the fair market value assessment made under the Consolidated County Assessment Law. Section 6(a) of LERTA requires that "[a]ppeals from the reassessment and the amounts eligible for the exemption may be taken by the taxpayer ...." 72 P.S. § 4727(a). As the Board notes, while the January 29, 2013 reassessment may have been derived from the initial fair market value made under the Consolidated County Assessment Law, the LERTA schedule of assessments is "set" unless the taxpayer appeals following receipt of the first LERTA notice. It correctly notes that even if a taxpayer's appeal of the initial assessment is permitted to proceed and that assessment is ultimately reduced, it would have no effect on the LERTA assessment because the tax exemption would be proportionately reduced.

However, the majority finds that even if the LERTA assessment is a new assessment, it is automatically appealed under Section 8854(a)(5) of the Consolidated County Assessment Law because Taxpayer has an outstanding appeal under that statute which remains pending. Taxpayer's appeal to the Board only challenged whether the property was assessed in accordance with its fair market value. While fair market value is a component in the LERTA valuation, as pointed out, a LERTA assessment is based on a combination of factors that must be taken into consideration which results in an assessment that has nothing to do with fair market value. That is why the General Assembly provided in Section 6(a) of LERTA that a separate appeal must be taken from the LERTA assessment because it was made for a different purpose than the fair market as-

---

4. Act of May 22, 1933, P.L. 853, *as amended*,     72 P.S. §§ 5020–1–5020–602.

sessment made under the Consolidated County Assessment Law.

Because the automatic appeal provisions applicable to subsequent tax years of a single assessment do not apply to LERTA assessments, I would affirm the trial court's motion to dismiss the appeal of fair market value taken under the Consolidated County Assessment Law because Taxpayer was required to file a separate appeal of the LERTA assessment.

## CONCURRING OPINION BY Judge SIMPSON.

I join in the thoughtful majority opinion. I write separately to add an additional reason to reject the argument that the unappealed LERTA[1] reassessment is "set" and cannot be changed by the Taxpayer's[2] pre-existing assessment appeal.

Berks County, Berks County Board of Assessment Appeals, the Reading School District, and the City of Reading (Taxing Authorities) argue that "even if Taxpayer['s] [pre-existing] appeal was permitted to go forward and the ... assessment was reduced, it still would not change the LERTA schedule of assessments that the Taxpayer accepted when it did not file an appeal of the [subsequent] LERTA reassessment following receipt of the ... Notice that the property was accepted into the City of Reading Abatement Program." Br. for Appellees at 11. The Taxing Authorities cite *Lincoln Philadelphia Realty Associates I v. Board of Revision of Taxes of City and County of Philadelphia*, 563 Pa. 189, 758 A.2d 1178, 1192 (2000), as the sole authority for this argument. *Id.*

This case does not support the position that a pre-existing appeal is mooted by a subsequent LERTA reassessment. In *Lincoln Realty*, one group of taxpayers waited until the entire five year period of LERTA tax abatements expired before appealing the LERTA reassessment. Another group of taxpayers waited until four of the five years of tax abatements were received before appealing the LERTA reassessment. Our Supreme Court held that "[t]o allow a taxpayer to accept an exemption on the terms offered and then, after having received all or part of the promised benefits, to assert that the exemption should have been greater, would undermine the salutary goal, noted earlier, of ensuring the reliability of a municipality's revenue projections...." *Lincoln Realty*, 758 A.2d at 1191. Thus, the case involved late LERTA appeals. The case did not involve any pre-existing assessment appeals.

Here, Taxpayer timely appealed the underlying assessment of the property before the LERTA reassessment. Under these circumstances, the Taxing Authorities were on notice that the underlying assessment for the tax year and subsequent tax years could change. This was true regardless of the subsequent LERTA reassessment. Also, Taxpayer had not yet received any benefits from admission into the Abatement Program when its pre-existing appeal was dismissed as moot. In short, the policy concerns referenced by the Supreme Court in *Lincoln Realty* have no application here. In the absence of a specific provision in LERTA or in the Reading LERTA Ordinance, there is simply no authority for dismissing an otherwise proper pre-existing assessment appeal.

---

1. "LERTA" refers to the Local Economic Revitalization Tax Assistance Act, Act of December 1, 1977, P.L. 237, *as amended*, 72 P.S. §§ 4722–4727.

2. 525 Lancaster Ave Apts., L.P. is the Taxpayer.